**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randolph D. Wolfson,          )<br>                                             )<br>              Plaintiff,          )<br>                                             )<br>vs.                                       )<br>                                             )<br>J. William Brammer, Jr., et al.,  )<br>                                             )<br>              Defendants.        )<br>_____) | No. CIV 06-2357-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Before the Court are Defendant Van Wyck's Motion to Dismiss Amended Complaint (Dkt. 52) and Commission Member Defendants' Motion to Dismiss Plaintiff's Verified Amended Complaint (Dkt. 53).

**BACKGROUND**

A. Statement of Facts

The facts relevant to the present inquiry are summarized as follows.

Plaintiff Randolf D. Wolfson ("Plaintiff") is an attorney admitted to the State Bar of Arizona with over 24 years of experience. After an unsuccessful 2006 campaign for the Office of Kingman Precinct Justice of the Peace, Mohave County, Arizona, Plaintiff has formed an exploratory committee in preparation for a 2008 election bid for Mohave County Superior Court Judge, Division 5.

Plaintiff regularly gives an in person presentation in his capacity as a practicing attorney regarding the issue of same-sex marriage and family values ("Presentation"). The

Presentation consists of a PowerPoint presentation in which Plaintiff discusses the political, legal, and moral ramifications of normalizing homosexuality and changing the traditional definition of marriage as between one man and one woman. In the Presentation, Plaintiff discusses current federal and state case law and statutes regarding same-sex marriage, homosexuality, gay adoption, and polygamy, as well as historical attitudes regarding homosexuality and polygamy. As originally written, the Presentation included the following statements relating to Arizona Proposition 107, a ballot initiative in the 2006 election: (1) "ACTIVIST JUDGES CAN BE CONTROLLED BUT IT WILL TAKE A CONSTITUTIONAL AMENDMENT TO GET IT DONE" (2) "Marriage is between a man and a woman. A YES vote on Prop. 107 will prevent a redefinition of marriage by political forces & activist judges."[1] Before ever giving the Presentation, Plaintiff changed it by removing the above listed statements and inserting the following disclaimer: "As a candidate for election to judicial office, Mr. Wolfson is not allowed to state his support or opposition on disputed legal issues."

On September 12, 2006, Plaintiff wrote the Arizona Judicial Ethics Advisory Committee ("JEAC"), requesting a formal advisory opinion and inquiring whether the Code on Judicial Conduct ("Code") prohibited him from voicing his opinion on Proposition 107 as well as from discussing his views on disputed legal and political issues.[2] Advisory Opinion 06-05, which was released on October 23, 2006, provides that "[a] judicial candidate may publicly discuss his or her personal opinion of an initiative measure or other political subject…because a candidate may express views on any disputed issue." The opinion cites to <u>Republican Party of Minnesota v. White</u> in support

---

[1] Proposition 107 was a proposed amendment to the Arizona Constitution that ultimately failed in the 2006 election. The text of the proposed amendment read: "To preserve and protect marriage in this state, only a union between one man and one woman shall be valid or recognized as marriage by this state or its political subdivisions and no legal status for unmarried persons shall be created or recognized by this state or its political subdivisions that is similar to that of marriage."

[2] Advisory Opinions can be used as a defense in judicial and lawyer discipline proceedings. Ariz. R. S. Ct. 82(h).

1   of its conclusion and withdraws Opinion 96-11, which prohibited judges from responding
2   to political questionnaires or surveys.
3       Plaintiff then brought the present lawsuit seeking to have Canons 3E(1), 3E(1)(e),
4   5A(1)(b)-(d), 5B(1)(a), 5B(1)(d)(i) and 5B(2) of the Code found unconstitutional.
5   According to Plaintiff, these canons chill constitutionally-protected speech by rendering
6   him unable to announce his views on disputed legal and political issues; make
7   endorsements; personally solicit funds for his committee; participate in any political
8   campaign other than his own; support candidates and state ballot initiatives; or, associate
9   himself with a political group or cause for fear of violating the Code.  In addition,
10  Plaintiff asserts that the offending canons prevent him from encouraging his family
11  members to engage in similar activities. Plaintiff also asserts that he will face professional
12  discipline if he endorses another candidate or personally solicits for and contributes to his
13  campaign committee since those activities are proscribed by the endorsement clause, the
14  solicitation clauses and the contribution clauses of the Code.  To date, no disciplinary
15  proceeding is pending or even contemplated against Plaintiff.
16  B. Procedural History
17      Plaintiff's original Complaint was filed on October 3, 2006. (Dkt. 1)   Defendant
18  Robert Van Wyck ("Van Wyck"), Chief Bar Counsel for the State bar of Arizona, and the
19  members of the Arizona Commission on Judicial Conduct ("Commission Member
20  Defendants") subsequently filed separate motions to dismiss on November 17, 2006.
21  (Dkts. 48, 49) Plaintiff filed an Amended Complaint on December 8, 2006.[3]  In turn, Van
22  Wyck and the Commission Member Defendants filed separate motions to dismiss the
23  Amended Complaint. ( Dkts. 52, 53)  Plaintiff's Response in Opposition to Defendants'
24  Motions to Dismiss was filed on January 24, 2007. (Dkt. 54)  Van Wyck and the

---

28  [3] For docketing purposes, the Amended Complaint (Dkt. 51) rendered Defendant Van Wyck's Motion to Dismiss (Dkt. 48) and Commission Member Defendants' Motion to Dismiss Plaintiff's Verified Complaint (Dkt. 49) moot.

Commission Member Defendants have each filed a reply and the matter is now fully briefed.[4]

## STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), plaintiff has the burden of proving jurisdiction in order to survive the motion." Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001). "A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect can be corrected by amendment." Id. (citations and internal quotations omitted).  On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

## DISCUSSION

Article III of the United States Constitution mandates that federal courts decide only "cases" or "controversies," which is analyzed through the justiciability doctrines of standing and ripeness.  Defendants both move to dismiss Plaintiff's Amended Complaint on justiciability grounds.[5]

//

//

---

[4] Although requested by Van Wyck, the Court does not find oral argument would be helpful in resolving this matter.

[5] In their briefs, both moving parties raised arguments regarding *Pullman* abstention and the Commission Member Defendants also raised an Eleventh Amendment challenge. Additionally, Van Wyck moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  In light of the finding regarding the issue of ripeness, discussed below, the Court need not address those arguments.

**A. Standing**

Standing is a threshold requirement in every federal case. Warth v. Seldin, 422 U.S. 490, 498 (1975). The three components of Article III standing are: (1) a distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the injury and challenged conduct; and (3) a substantial likelihood that the relief requested will prevent or redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Covington v. Jefferson County, 358 F.3d 626, 637-38 (9th Cir. 2004). Ripeness often "coincides squarely with standing's injury in fact prong," Thomas v. Anchorage Equal Right Com'n, 220 F. 3d 1134, 1138 (2000) (en banc), and in "measuring whether a litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." Id. at 1139 (quoting Gene R. Nichol, Jr., *Ripeness and the Constitution*, 54 U. Chi. L.Rev. 153, 172 (1987)). The instant action presents such a situation: the constitutional component of the ripeness inquiry merges with the injury in fact prong of standing. Therefore, defendants' claims regarding the speculative nature of Plaintiff's injury will be addressed in the Court's evaluation of ripeness.

**B. Ripeness**

"[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." Chemerinsky, *Federal Jurisdiction*, 113 (2003) (citing Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967)). As the Ninth Circuit previously observed, the court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." Thomas, 220 F. 3d at 1138. The ripeness inquiry contains both a constitutional and a prudential component. Portman v. County of Santa Clara, 995 F.2d 898, 902 (9th Cir. 1993).

//

//

*a) Constitutional Component*

The constitutional component evaluates whether a plaintiff is facing "a realistic danger of sustaining a direct injury as a result of the statute's operation of enforcement," which is accomplished by considering three factors: (1) whether plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution of enforcement under the challenged statute. Thomas, 220 F. 3d at 1139 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

The first factor weighs slightly in Plaintiff's favor: by declaring his intent to run for the judgeship in Mohave County, Plaintiff has identified more than a "hypothetical intent" to violate the Canons. Thomas, 229 F.3d at 1139. Looking beyond the second factor for a moment, the Court finds that the third factor- the history of past prosecution or enforcement under the challenged statute– weighs against Plaintiff. Plaintiff does not cite a single enforcement action in Arizona brought under the challenged provisions of the Code. Whether Plaintiff has met his burden regarding the second factor is a more difficult question.

To satisfy the second factor Plaintiff needs to demonstrate a specific threat of enforcement. While admitting that the Canons have not been enforced against him, Plaintiff asserts that "they need not be as they are already chilling his speech by virtue of their very existence." (Dkt. 54 at 7). The Ninth Circuit has repeatedly stated that the "mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." San Diego County Gun Rights Committee v. Reno, 98 F.3d 1121 (9th Cir. 1996) (quoting Stoianoff v. Montana, 695 F.2d 1214, 1223 (9th Cir. 1983)). However, this requirement has been relaxed considerably for constitutional challenges based upon the First Amendment in light of the Supreme Court's endorsement of "what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences due to the "unique standing considerations." Ariz. Right

1  to Life PAC v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003)(citations omitted).  Thus, in
2  the context of First Amendment-protected speech, the "potential plaintiff" need only
3  possess an "actual and well-founded fear that the law will be enforced against him or
4  her." Cal. Pro-Life Council, Inc. V. Getman, 328 F.3d 1088, 1095 (9th Cir. 2003)
5  (citations omitted).  Stated differently, while "the self-censorship door to standing is not
6  available for every plaintiff, fear of prosecution in the free speech context inures if the
7  plaintiff's intended speech arguably falls within the statute's reach." Humanitarian Law
8  Project v. Ashcroft, 309 F.Supp.2d 1185, 1197 (C.D. Cal. 2004) (citation omitted).

9      In the present case, while no disciplinary proceeding is pending or even contemplated
10 against Plaintiff, he asserts: that the pledges and promises clause and the commits clause
11 will be enforced against him if he announces his views on disputed legal and political
12 issues; that he must recuse himself should he become judge from any of the cases
13 involving the issues about which he announced his views; and, that such announcements
14 will constitute a violation of the campaigning prohibition and the political activities
15 clause. (Dkt. 54 at 7)  Plaintiff also asserts that he faces discipline if he endorses another
16 candidate or personally solicits for and contributes to his campaign committee since those
17 activities are proscribed by the endorsement clause, the solicitation clauses and the
18 contribution clauses. (Id.)  While the Amended Complaint lacks any detail about the type
19 of speech Plaintiff wishes to engage in during the 2008 election, it does specifically
20 address his desire to discuss Proposition 107, a ballot initiative that was defeated in the
21 2006 election.  Plaintiff's Amended Complaint demonstrates that he holds strong views
22 regarding the issues of same-sex marriage, homosexuality, gay adoption and polygamy.
23 The Amended Complaint also refers to "future campaigns" and "future judicial elections"
24 so the Court presumes that Plaintiff seeks to continue discussing these and other similar
25 issues in his next election.

26     Casting aside the lack of detail regarding Plaintiff's intended speech, Plaintiff makes
27 some non-frivolous arguments regarding the lack of clarity in the Code created by the
28 Supreme Court's decision in Republican Party of Minnesota v. White, 526 U.S. 765

1  (2002).  Essentially, Plaintiff's arguments are all variations on a single theme: the
2  contours of constitutionally protected speech in judicial elections are unclear in light of
3  the Supreme Court's holding in White.  For example, Plaintiff argues that Canon
4  5B(1)(d)(i) "sweeps constitutionally protected announcements of personal views on
5  disputed legal and political issues within the sphere of prohibited speech." (Dkt 51 at 15)[6]
6  Similarly, Plaintiff states that Canon 3E(1)(e) is unconstitutionally vague since judicial
7  candidates wishing to engage in constitutionally protected speech are restricted from
8  doing so for fear that they will be required to recuse themselves from future cases.
9  Arguably, Plaintiff's intended speech regarding same-sex marriage, homosexuality, gay
10 adoption and polygamy could run afoul of the Code.  White allows judicial candidates to
11 announce their views on disputed political and legal issues, yet certain provisions of the
12 Code, as Plaintiff notes, create potential consequences for the judicial candidate that
13 announces too much during his election.  Therefore, in light of the relaxed standing
14 requirements afforded to First Amendment claims, the Court finds that the second factors
15 weighs ever-so-slightly in Plaintiff's favor.[7]

16     Accordingly, considering all of the applicable factors and, most importantly,
17 considering the fact that the claimed-injury implicates free speech concerns, the Court
18 finds that Plaintiff just slightly satisfies the constitutional component of the ripeness
19 inquiry.

20     *b) Prudential Component*

21     The prudential component of ripeness is guided by two considerations: "the fitness of
22 the issues for judicial decision and the hardship to the parties of withholding court
23 *consideration."* Thomas, *220 F.3d at 1141 (citation omitted).  Plaintiff meets the first*
24 prong because his claims are essentially legal in nature. See City of Auburn v. Qwest

---

[6] The relevant portion of the commits clause provides that a judicial candidate shall not "with respect to cases, controversies, or issues that are likely to come before the court, makes pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of office ...." Canons 5B(1)(d)(i).

[7] The Court emphasizes that this finding is based entirely on the fact that Plaintiff's alleged injuries are to rights protected by the First Amendment.

1  Corp., 260 F.3d 1160, 1172 (9th Cir. 2001) (stating that if a controversy is essentially
2  legal in nature, then it is fit for judicial decision).  However, the Court finds that Plaintiff
3  faces insufficient hardship to warrant the exercise of jurisdiction given the lack of any
4  real or imminent threat of enforcement.  See Thomas, 220 F.3d at 1142.  As both
5  Defendants point out in their briefs, all of Plaintiff's alleged fears regarding the potential
6  reach of the Code can be allayed by seeking clarification from the JEAC, which Plaintiff
7  has previously done.  Prior to filing the present action Plaintiff did exactly that: he
8  contacted the JEAC regarding his desire to give a presentation concerning disputed legal
9  and political issues, such as Proposition 107.  Within thirty days, the JEAC issued
10 Advisory Opinion 06-05, which stated that Plaintiff was permitted to announce his views
11 on disputed legal and political issues, such as Proposition 107.  Given the fact that
12 Plaintiff received such a timely and favorable response from the JEAC the first time he
13 sought clarification, the Court finds no reason why Plaintiff has thus far declined to
14 exercise this avenue of relief once again.  Alternatively, Plaintiff can petition the Supreme
15 Court of Arizona under Arizona Supreme Court Rule 28, to seek revisions of the Code
16 that will address any of his concerns.  Regardless, since "[p]rudential considerations of
17 ripeness are discretionary," Thomas, 220 F.3d at 1142, the Court will exercise its
18 discretion to decline jurisdiction over the dispute until Plaintiff actually faces either an
19 enforcement proceeding or the imminent threat of one.

## CONCLUSION

21  Accordingly, in light of the Court's finding that this action is not ripe for judicial
22 review,

23  **IT IS HEREBY ORDERED GRANTING** Defendant Van Wyck's Motion to
24 Dismiss Amended Complaint (Dkt. 52) and Commission Member Defendants' Motion to
25 Dismiss Plaintiff's Verified Amended Complaint (Dkt. 53) on ripeness grounds.
26 //
27 //
28 //

**IT IS FURTHERED ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** and that all pending motions and hearings in this matter are **VACATED**.

DATED this 8th day of August, 2007.

_____
Stephen M. McNamee
United States District Judge